| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

HUGH SMITH,

                Plaintiff,

      – against –

CITY OF NEW YORK, et al.,

                Defendants.

**MEMORANDUM & ORDER**

12-cv-4851-ERK-LB

KORMAN, *J.*:

      Plaintiff Hugh Smith filed this action alleging he was brutally battered by multiple corrections officers while in the custody of New York City's Department of Corrections (the "DOC"). The City of New York (the "City") and the individual defendants move for judgment on the pleadings. They rely on a General Release and Stipulation of Settlement from an unrelated case which dismissed that case with prejudice and which released any other claims that Smith had alleging a violation of his civil rights "from the beginning of the world to the date of [the] General Release." Smith signed the General Release and Stipulation without the aid of counsel while incarcerated and while battling mental conditions, including paranoid schizophrenia. Moreover, Smith's reading comprehension is at the second grade level. While Smith was *pro se* in the foregoing proceeding, he had retained counsel in this and one other civil rights case, both of which were pending against the City at the time Smith signed the General Release and Stipulation. Nevertheless, the City procured Smith's signature without consulting counsel. The issue presented is whether the General Release and Stipulation, executed under these circumstances, operate to bar this action.

## BACKGROUND

Smith's second amended complaint outlines various causes of action against the City of New York and three of its corrections officers, Anthony Lindsay, Margarita Smith, and Rodney Cassell (collectively, the "defendants"). Specifically, Smith alleges causes of action pursuant to 42 U.S.C. § 1983 and supplemental common law causes of action under New York tort law. The defendants have filed a Rule 12(c) motion for judgment on the pleadings, arguing that this action is barred pursuant to the General Release and Stipulation of Settlement that were procured under the circumstances described above.

The present case is third in a string of four brought by plaintiff against the City and its employees. I discuss each case in turn.

I.  **Smith I –** *Smith v. Correction Officer Cameron, et al.*, **11-cv-4049 (HB)**

On May 24, 2011, plaintiff filed *Smith I* in the Southern District of New York. (Pl.'s Mem. Op. Defs.' 12(c) Mot., July 11, 2014, ECF No. 43, 3.) He alleged that DOC officers unlawfully deprived him of property by changing his telephone PIN without permission or authority. (*Id.*) Plaintiff proceeded *pro se* throughout all stages of the *Smith I* litigation, including its ultimate settlement and dismissal. (*See id.*)

In late May 2012, plaintiff entered into a settlement agreement with the *Smith I* defendants, pursuant to which the *Smith I* defendants paid $750 as consideration for plaintiff's release of liability. (*Id.* at 4.) On June 5, 2012, plaintiff signed a General Release, which states that plaintiff does:

> [R]elease and discharge [the defendants] from any and all liability, claims, or rights of action alleging violation of my civil rights, from the beginning of the world to the date of this General Release, including claims for costs, expenses, and attorneys' fees. This release may not be changed orally. The undersigned has read the forgoing release and fully understands it.

2

(Defs.' Mem. Supp. 12(c) Mot., Feb. 2, 2014, ECF No. 37, 1-2.)

On the same day, plaintiff signed a Stipulation of Settlement, which incorporated by reference the General Release quoted above. The terms of the Stipulation were then "So Ordered" by the district judge to whom the case was assigned and who has since died. (Stip. of Settl. Order & Diss., June 14, 2012, 11-cv-4049, ECF No. 35 [hereinafter "*Smith I* Order"], ¶ 3 (S.D.N.Y.).) The Stipulation provides that:

> In consideration for the payment of this sum, plaintiff agrees to dismiss with prejudice of all [*sic*] the claims against the defendants . . . and to release [the defendants] from any and all liability, claims, or rights of action alleging a violation of plaintiff's civil rights, from the beginning of the world to the date of the General Release, including claims for costs, expenses, and attorneys' fees.

(*Id.* at ¶ 2.) Notwithstanding their facially broad language, the General Release and Stipulation are narrowed in two ways. First, they both release liability regarding civil rights violations only. Second, the Stipulation provides that it "shall not be admissible in, nor is it related to, any other litigation or settlement negotiations." (*See id.* at ¶ 4.)

## II. Smith II – *Smith, et al. v. City of New York, et al.*, 12-cv-3303 (CM)

Pending at the time of the *Smith I* General Release and Stipulation was *Smith II*. In *Smith II*, plaintiff asserted various causes of action against the City and several DOC employees regarding improper accommodations for religious practice at a corrections facility on Rikers Island. (Compl., April 25, 2012, 12-cv-3303 (S.D.N.Y.), ECF No. 2, 3-4.) The district judge to whom that case was assigned consolidated plaintiff's action with other actions filed by similarly situated plaintiffs. (Order, Sept. 26, 2013, 12-cv-3303 (S.D.N.Y.), ECF No. 87 [hereinafter "*Smith II* Order"], 4.) Freshfields Brockhause Deringer US LLP, which was ultimately assigned

as pro bono counsel, then filed a single complaint listing all consolidated plaintiffs in one caption. (*Id.* at 4.)

On February 28, 2013, the *Smith II* defendants moved to dismiss plaintiffs' consolidated complaint as to plaintiff Smith based on the General Release and Stipulation that he signed during the *Smith I* litigation. (*Id.* at 7.) In granting the motion, the *Smith II* district judge held that "[u]nder the plain language of the Release, Smith is barred by the settlement from bringing any civil rights claims in this action, which was brought on April 25, 2012, before the Release was signed on June 5, 2012." (*Id.* at 9.) The *Smith II* judge also observed that "if Smith wishes to press the claim that the [S]ettlement and Release were procured by fraud [or] other illegal means, and so void the agreements, he must do so before [the *Smith I* district judge], not me. Only if the Release were set aside in [*Smith I*] could Smith bring his claims in this action." (*Id.* at 11.)

### III. This Action, Smith III – *Smith v. City of New York, et al.*, 12-cv-4851 (ERK) (LB)

Plaintiff, represented by new counsel, filed this action on September 27, 2012, after filing a notice of claim on or about November 3, 2011. (*See* Compl., at 1, 11 & ¶ 68.) Plaintiff claims that on June 29, 2011, while he was in a cell at the Queens County Courthouse, corrections officer Anthony Lindsay assaulted and battered him without justification. (Second Am. Compl., July 19, 2013, ECF No. 30, 3-5.) Plaintiff alleges that Lindsay repeatedly struck him in the face and head, slammed him into a bench, and lacerated his ear with a key or other sharp object. (*Id.*) He further alleges that defendant corrections officer Margarita Smith observed Lindsay's abusive conduct but failed to intervene. (*Id.*) After Lindsay transferred plaintiff to a waiting area, defendant corrections officer Captain Rodney Cassell allegedly grabbed plaintiff's cane, causing

4

plaintiff to fall to the floor, where Cassell left plaintiff for about one hour before transferring plaintiff to Queens Hospital Center. (*Id.*)

In February 2014, the defendants in this action filed a motion for judgment on the pleadings. They argue that the *Smith I* General Release and Stipulation require dismissal of this action because the underlying events here occurred within the dates that the hold harmless provisions cover. (Defs.' Mem. Supp. 12(c) Mot., at 4-5.) I will address this argument shortly.

### IV. Smith IV – *Smith v. City of New York, et al.*, 12-cv-5417 (MKB) (CLP)

Represented by the same counsel as in *Smith III*, plaintiff filed *Smith IV* on November 1, 2012, after filing a notice of claim on or before November 3, 2011. (*See* Compl., Nov. 1, 2012, 12-cv-5417 (E.D.N.Y.), ECF No. 1, 1, 20 & ¶ 121.) Plaintiff alleges negligence and reckless conduct on behalf of the City and several DOC employees, stemming from incidents in which plaintiff committed self-inflicted injuries due to inadequate supervision—*e.g.*, swallowing glass, swallowing an excess of medication, and cutting of the wrists and arms. (*See id.* at 4-14.) Plaintiff further alleges that DOC employees assaulted and battered plaintiff, causing contusions on plaintiff's neck, face, and scalp. (*Id.*) The case was assigned to Judge Brodie who has suspended motion practice pending the outcome of this Memorandum & Order. (*See* Defs.' Reply Mem. Supp. 12(c) Mot., Ex. A, Aug. 8, 2014, ECF No. 47, 27.)

## DISCUSSION

### I. Standard of Review

Parties may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Hogan v. Fischer*, 738 F.3d 509, 514-15 (2d Cir. 2013). To

survive a defendant's 12(c) attack, a plaintiff's "complaint must contain sufficient factual matters to state a claim to relief that is plausible on its face." *Kirkendall v. Halliburton*, 707 F.3d 173, 178-79 (2d Cir. 2013). When adjudicating 12(c) motions, courts accept the complaint's factual allegations and draw all reasonable inferences in the plaintiff's favor. *Id.* at 178.

## II. Whether *Smith II* Constitutes Res Judicata

"The phrase 'res judicata' has taken on several meanings. In its technical sense, res judicata—thing adjudicated—is applicable only when a party is attempting to relitigate a whole cause of action; it intervenes in that instance to foreclose not only matters litigated but also those that might have been litigated. This has come to be called 'claim preclusion,' to be distinct from the doctrine of collateral estoppel, which the Restatement [(Second) of Judgments § 27] denotes 'issue preclusion.'" David D. Siegel, NEW YORK PRACTICE, 772 (5th ed.). "Unlike res judicata itself, which applies only when the same cause of action is repeated—for which reason it often goes under the name of 'claim preclusion' today—collateral estoppel applies when the second cause of action is distinct or different, applying to issues rather than to whole claims or defenses." *Id.* at 794; *see also* Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4402 (2d ed.). Issue preclusion, which is relevant to this dispute, attaches only when "(1) the issues in both proceedings [are] identical, (2) the issue in the prior proceeding [was] actually litigated and actually decided, (3) there [was] a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated [was] necessary to support a valid and final judgment on the merits." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986).

Of particular relevance here is the requirement that there have been a fair and full opportunity for litigation that includes the right to appellate review. Professor David Siegel has aptly observed that a "full day in court in New York practice includes the appellate process if the

6

loser wants it, and a situation in which an appeal is foreclosed can thus be regarded as an inadequate day in court." Siegel, *supra*, at 806-07 (citing Restatement (Second) Judgments § 28(1)). This observation is not limited to New York practice. As the Second Circuit has held, "[a]ppellate review plays a central role in assuring the accuracy of decisions. Thus, although failure to appeal does not prevent preclusion, inability to obtain appellate review, or the lack of such review once an appeal is taken, does prevent preclusion." *Gelb*, 798 F.2d at 44.

*Smith II* is an improper predicate for issue preclusion because it is still pending before the district court and is not appealable. Indeed, while the district court dismissed plaintiff Smith from *Smith II*, some of Smith's co-plaintiffs continue prosecuting the case in the district court. Plaintiff Smith's dismissal is thus open for reexamination and cannot be appealed at this time. *See* Fed. R. Civ. P. 54(b); *Leonhard v. United States*, 633 F.2d 599, 608 (2d Cir. 1980) (appeal not immediately available where district court dismissed some but not all defendants).

### III. Avoiding the General Release and Stipulation of Settlement

Smith argues that he can avoid the General Release and Stipulation due to unilateral mistake as well as his own mental incapacity at time he signed the documents. Passing over Smith's unilateral mistake argument, I deny the defendants' motion because there is evidence suggesting that mental incapacity and other extreme circumstances may warrant granting plaintiff relief from the binding effect of the General Release and Stipulation, including the "So Ordered" Stipulation of Settlement that the district judge entered in *Smith I*.

Parties may seek relief from "So Ordered" stipulations of settlement through at least two avenues—Rule 60(b) and an "independent action." *See* Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2868 (3d ed.) Under Rule 60(b)(6), courts may vacate final judgments based on "extraordinary circumstances." *Roderiguez v. Mitchell*, 252 F.3d 191, 201 (2d Cir. 2001). Rule 60(b)(6) grants courts discretion to "preserve the delicate balance between the sanctity of final

7

judgments . . . and the incessant command of the court's conscience that justice be done in light of *all* the facts." *First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda—Permanent Mission*, 877 F.2d 189, 196 (2d Cir. 1989) (emphasis in original). As for independent actions, parties may prevail in such actions when they demonstrate (i) no other available remedy; (ii) that their own fault did not create the situation from which they now seek relief; and (iii) a recognized ground for equitable relief exists, such as "fraud, accident, or mistake." *Campaniello Imports, Ltd. v. Saportiti Italia S.P.A.*, 117 F.3d 655, 662 (2d Cir. 1997).

I treat the complaint as including a request for relief pursuant to Rule 60(b) and conclude that that Smith has a plausible claim based on the circumstances surrounding plaintiff's assent to the General Release and Stipulation. First, plaintiff presents documentation detailing a host of mental conditions as well as extremely limited reading comprehension. Reports from New York City's Correctional Health Services provide a history of chronic paranoid schizophrenia, extreme bipolar, major depression, personality disorder, and suicidal ideation. (*See* Summary View for Hugh Smith, ECF No. 44-13, at 1-18.) A report from New York's Department of Corrections states that plaintiff's reading comprehension is equivalent to that of an eight year old.[1] (*See* Inmate Progress Report, ECF No. 44-12, at 1-2.)

These handicaps raise questions regarding plaintiff's competence at the time he signed the General Release and Stipulation. The Restatement (Second) of Contracts § 15 states that a "person incurs only voidable contractual duties [when] . . . he is unable to act in a reasonable manner . . . and the other party has reason to know of his condition." *See Ortelere v. Teachers'*

---

[1] Smith's complaint did not refer to or incorporate these documents. Nevertheless, Smith included them in his brief in opposition to the City's motion for judgment on the pleadings. I may rely on these materials to deny the City's motion. I would not do so, at least not without giving notice to Smith, if these materials were relied on in support of the motion for judgment on the pleadings. *See Gurary v. Winehouse*, 190 F.3d 37, 42-43 (2d Cir. 1999). In essence, I am deeming the complaint amended to include these documents.

*Ret. Bd. of City of New York*, 25 N.Y.2d 196, 204-05 (1969) (applying the Restatement); *State of New York v. Kama*, 267 A.D.2d 225, 225-26 (N.Y. App. Div. 2d Dep't 1999) (vacature of judgment entered against a defendant appropriate where plaintiff had notice that defendant suffered from bipolar disorder). Here, the Corporation Counsel knew or should have known of plaintiff's conditions, because the health reports discussed above were in fact written by *New York City's* Correctional Health Services. Even if the Corporation Counsel had no reason to know of Smith's conditions, Smith might ultimately obtain relief where it would work no undue prejudice on the defendants and where to hold otherwise would be inequitable. *See DuFort v. Aetna Life Ins. Co.*, 818 F. Supp. 578, 583 (S.D.N.Y. 1993) (collecting New York case law).

Second, Smith signed the *Smith I* General Release and Stipulation *after* his attorney served the City with notices of claim in *Smith III* and *IV*. Thus, with actual or constructive knowledge that he had obtained an attorney in *Smith III* and *IV*, the Corporation Counsel secured Smith's release from those suits without consulting counsel. Indeed, because plaintiff's counsel had served the City with notices of claim in *Smith III* and *IV*, constructive knowledge is appropriate. *Cf. Tatum v. City of New York*, 161 A.D.2d 580, 581 (N.Y. App. Div. 2d Dep't 1990) ("Knowledge from police arrest records and District Attorney investigations may under some circumstances be imputed to a municipality.").

Third, the $750 in consideration provided by the City is arguably insignificant in light of plaintiff's broad release. That is, the *Smith I* General Release and Stipulation supposedly released the City not only from *Smith I*, but also *Smith II*, *III*, and *IV*. Here, *Smith III* and *IV* are notable in that they allege a brutal assault and battery as well as a failure to supervise resulting in extreme physical and emotional damage. The release of these claims for the nominal amount provided is a cause for concern when coupled with plaintiff's *pro se* status and mental

9

conditions.  *See, e.g.*, *Roland v. Rivera*, No. 9:07-cv-230, WL 1651840 (N.D.N.Y. June 6, 2007) (*pro se* status and mental conditions warranted granting Rule 60(b)(6) relief).

*Mutual Life Ins. Co. v. Hunt*—among the first cases in which the Court of Appeals of New York considered capacity to contract—provides a useful contrast to this case.  There, the court upheld a loan agreement despite issues regarding the borrower's competency, ruling that the deal was:

> [F]air and reasonable . . . the [borrower] acted [] with the aid of an attorney; if mental unsoundness existed, it was not known to the [lender], and the parties cannot now be put *in statu quo*.

34 Sickels 541, 545 (1880).  This case presents the opposite circumstances.  The terms of the settlement appear one-sided; plaintiff acted without an attorney; the Corporation Counsel had actual or constructive knowledge of plaintiff's mental conditions; and the parties could be returned to their pre-settlement positions—for example, by plaintiff returning his $750 in exchange for recanting the release.

I note that there are cases suggesting that the "normal" procedure for attacking a "So Ordered" Stipulation of Settlement should be by motion in the court that rendered the judgment. *See, e.g.*, *Lapin v. Shulton, Inc.*, 333 F.2d 169, 172 (9th Cir. 1964).  Such a procedure is premised on the assumption that the rendering judge is best suited to evaluate the merits of such an attack. *See Civil Procedure: Federal Rule 60(b)(5) and Relief From Injunctions Issued by Another Federal Court*, 65 COLUM. L. REV. 539, 542 (1969).  While this rationale may apply in cases where the rendering judge played a substantial role in the settlement process, there is no indication here that the *Smith I* judge took any role in that process.  Instead, it appears as though he simply rubberstamped the Stipulation.  In any event, the *Smith I* district judge died in May 2014.  Indeed, the principle problem with this case is the lack of judicial oversight in the first

instance, which was largely due to the failure of the defendants to call the *Smith I* judge's attention to the extenuating circumstances present here. If he had been so apprised, he very likely would not have "So Ordered" a Stipulation in which a mentally impaired *pro se* plaintiff may have unknowingly released pending claims other than the claim he was settling.

**IV.    Scope of the General Release and Stipulation of Settlement**

Regardless of Smith's capacity at the time he signed the *Smith I* General Release and Stipulation, the documents are ambiguous and for that reason I deny the defendants' motion. Courts construe settlement releases according to general principles of contract law. *See Collins v. Harrison-Bodem*, 303 F.3d 429, 433 (2d Cir. 2002). Under New York law, an "[a]mbiguity is present if language was written so imperfectly that it is susceptible to more than one reasonable interpretation." *Brad H. v. City of New York*, 17 N.Y.3d 180, 185 (2011). Courts must deny motions for judgments on the pleadings when predicated on ambiguous contract terms. *See MyPlayCity, Inc. v. Conduit, Ltd.*, No. 10 Civ. 1615, WL 3273487, at *4-5 (S.D.N.Y. July 29, 2011) (collecting cases).

First, the General Release and Stipulation relate to "any and all liability, claims, or rights of action alleging a violation of [] civil rights." This suggests that they bar only those actions alleging civil rights violations, whereas here Smith alleges (in additional to six civil rights counts) eight counts grounded in New York tort law. Second, while the hold harmless provisions in the General Release and Stipulation seem to bar this action to the extent it alleges civil rights violations, the Stipulation contains a limiting provision: "This stipulation shall not be admissible in, nor is it related to, any other litigation." This limiting provision suggests that the Stipulation would not bar this action at all. Moreover, circumstances warrant reading the General Release and Stipulation together—the two documents were signed on the same day,

11

relate to identical subject-matter, and the Stipulation references the General Release. *See Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261, 263 (2d Cir. 1965).

Third, the uncertainty created by the Stipulation's limiting provision is magnified by the other actions pending when Smith signed the General Release and Stipulation—*i.e.*, *Smith II*, for which Smith had filed a complaint; *Smith III* and *IV*, for which he had served notices of claim. As discussed earlier, the Corporation Counsel had at least constructive knowledge of these other actions. Yet in drafting the Stipulation not only did it fail to address these pending actions, but it in fact chose to retain the limiting provision quoted above. *See Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 674 (2d Cir. 1997) (discussing New York law when ambiguous contract terms should be interpreted against the drafting party).

## CONCLUSION

The defendants' motion for judgment on the pleadings is denied.

**SO ORDERED.**

Brooklyn, New York
December 2, 2014

/s/
Edward R. Korman
Senior United States District Judge